UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CELINA LEDESMA, MAURICIO DIAZ, MANUEL DE JESUS ALFARO, JUAN JIMENEZ, AND DANIEL MENDOZA<br><br>Plaintiffs,<br><br>v.<br><br>HIGHLAND WOODS GOLF & COUNTRY CLUB, INC.,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:11-cv-00359-CEH-DNF<br><br>RESPONSE TO DISPOSITIVE MOTION |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**NOW COMES,** the Plaintiffs, by and through their attorneys, **ROJAS & BUTCHER, P.L.**, and hereby respectfully file their Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint and Incorporated Memorandum of Law, and state as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. On June 27, 2011, Plaintiffs filed a thirteen (13) count Complaint in the instant action, with Counts I-IV asserted on behalf of Plaintiff Celina Ledesma ("Ledesma") only and Counts V-IIIX asserted on behalf of all Plaintiffs.

2. The Complaint alleged a variety of employment-related claims under both state and federal law[1] against the Plaintiffs' former employer, Defendant Highland Woods Golf & Country Club, Inc. ("Highland Woods").

---

[1] For a more detailed description of each of the causes of action in the Complaint, in the interest of economy, the Plaintiffs hereby incorporate by reference ¶¶ 1-2 of the Complaint as if set forth in full herein.

1

3. On September 9, 2011, Defendant filed its Motion to Dismiss Plaintiffs' Complaint and Incorporated Memorandum of Law ("Motion to Dismiss") which seeks the dismissal of the Complaint in its entirety on the grounds that there are fatal deficiencies in each count of the Complaint and, further, that these deficiencies cannot be corrected by amending the Complaint.

4. Plaintiffs also filed on September 9, 2011, the Declaration of William J. Clark in Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Declaration of Clark"), which was designated as "Exhibit 1." Attached to the Declaration of Clark were the Charges of Discrimination for Plaintiffs Manuel Alfaro ("Exhibit A"), Juan Jimenez ("Exhibit B"), Daniel Mendoza ("Exhibit C"), Melsar Acuna (who, as is explained below, is Plaintiff Mauricio Diaz ("Exhibit D"), and Celina Ledesma ("Exhibit E").

5. Plaintiffs agree that Counts VI and XI are fatally deficient as they relate to Plaintiffs Mauricio Diaz ("Diaz"), Manuel De Jesus Alfaro ("De Jesus Alfaro"), Juan Jimenez ("Jimenez"), and Daniel Mendoza ("Mendoza") for the reasons set forth below, and that this deficiency cannot be correct through an Amended Complaint.

6. Plaintiffs agree that Counts IX and X are deficient as currently pled due to insufficient factual details, but refute any assertion that this deficiency cannot be corrected through an Amended Complaint.

7. With the exceptions noted above regarding Counts VI, IX, X, and XI, Plaintiffs deny ¶¶ 4-5 of the Motion to Dismiss. Plaintiffs refute that any of the counts of the Complaint are deficient and assert, in the alternative, that if there were any deficiencies in the Complaint, these could be remedied though an Amended Complaint.

**MEMORANDUM OF LAW**

**I. STANDARDS FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss, the Court is required to accept the allegations as true and view the complaint in the light most favorable to the plaintiff. *See Timson v. Sampson,* 518 F.3d 870, 872 (11th Cir. 2008*)*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009), quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544*, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* When there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal* at 1950. The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2), (d)(1). Rule 8 does not require a plaintiff to provide detailed factual allegations; but a complaint will not suffice if it offers no more than

"labels and conclusions," or "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Defendant's Exhibit 1, Declaration of Clark, filed in support of its Motion to Dismiss and the factual allegations asserted in the "Introduction" to Defendant's Motion to Dismiss (§ I, 1-3) may not be considered in the resolution of this motion. As a general rule, the district court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. *Lewis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623, 627 (11th Cir. Fla. 2008). If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984). Defendant's Motion to Dismiss cannot be converted to a motion for summary judgment since the plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment only after adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986).[2] As the instant case is in its mere infancy and discovery has yet to begin, it would be inappropriate for the Defendant's Motion to Dismiss to be converted to a motion for summary judgment.

A court may only consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. Fla. 2005). Exhibit 1, Declaration of Clark, and the factual allegations raised in the "Introduction" to

---

[2] Even if it were permissible for the Court to covert this 12(b)(6) motion into one for summary judgment to consider matters outside the pleadings, the Court would be required to give all parties ten-days notice that the motion is being converted . *See Lewis,* 305 Fed. Appx. at 627.

Defendant's Motion to Dismiss are not central to the Plaintiffs' claim and are vigorously disputed by Plaintiffs.[3] Therefore they may not be considered in this matter.

## II. COUNT I – HOSTILE ENVIRONMENT SEXUAL HARASSMENT OF LEDESMA IN VIOLATION OF TITLE VII

To establish a prima facie claim for hostile environment sexual harassment in violation of Title VII of the Civil Rights Act of ("Title VII"), 42 USC §2000e, *et seq.*, a plaintiff must show the following: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists. *Cotton v. Cracker Barrel Old Country Store, Inc*., 434 F.3d 1227, 1231 (11th Cir. 2006). The Defendant asserts that Plaintiff Ledesma's claim fails with respect to the second, third, fourth, and fifth elements. Plaintiffs will address each allegation in turn.

### A. "Sexual Harassment"

Ledesma was sexually harassed by her supervisor, Billy Haskins. However, Defendant claims that the facts set forth in the Complaint (¶¶ 47- 55) cannot possibly rise to the level of "sexual harassment." Motion to Dismiss at 12-13. Defendant misconstrues the pleadings, implying that that Plaintiff Ledesma was subjected to only a few isolated incidents (Motion to Dismiss at 12), notwithstanding ¶ 55 (stating that Haskins harassed Ledesma almost every day for five months). Further, the Defendant demonstrates a fundamental misunderstanding of the concept by asserting that Ledesma has not made a claim of sexual harassment since she does not allege that "she was the recipient of any unwelcome advances or requests for sexual favors." Motion to Dismiss at 12. Even nonsexual hostile conduct, where the victim is singled out for

---

[3] Plaintiffs do not object to Exhibits A-E, which are attached to the offensive and improper Exhibit 1, as Exhibits A-E are undisputed and central to the Plaintiffs' Claim.

treatment on the basis of gender, can be sexual harassment. *See, e.g., Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999).

Defendant cites a plethora of cases—all of which are distinguishable on the procedural posture[4] or facts from the instant case, in which specific acts or statements were ultimately held not to rise to the level of sexual harassment. Yet the United States Supreme Court has stated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances, [including] . . . the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . no single factor is required." *Harris v. Forklift System*, 510 U.S. 17, 23 (1993). Given this fact-specific inquiry, it is impossible to determine based on the Complaint alone whether a particular statement or act can rise to the level of sexual harassment.

### B. Based on Sex

Defendant correctly asserts that a claim for sexual harassment may not lie against a true equal-opportunity harasser, who harasses men and women equally. Motion to Dismiss at 13. However, Plaintiffs dispute the necessity to plead with any more specificity on this point than they have already done. Ultimately whether Ledesma was treated differently because of her sex is another question of fact which cannot be resolved on the pleadings.

### C. Severe or Pervasive Harassment

Despite ¶¶ 114-15, (alleging that Ledesma found the harassment "severe and/or pervasive enough to alter the terms of her employment" and that a reasonable person in her circumstances would have found the same) and ¶ 55 (alleging that Haskins sexually harassed

---

[4] Notably, none of the cases cited by Defendant in pp. 12-13 of its Motion to Dismiss involved dismissal of a claim of sexual harassment any sooner than at the summary judgment stage, and all but one involved claims that had gone to trial.

Ledesma approximately every day for five months), Defendant nevertheless argues that "Ledesma fails to show that the terms and conditions of her employment were altered by severe and pervasive harassment." Motion to Dismiss at 13. Firstly, the standard is severe or pervasive harassment, not both. *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F. 3d 1139, 1147 (11th Cir.). Secondly, as previously mentioned, the determination of whether the harassment is severe or pervasive is a multi-factor evaluation which must take into consideration all the circumstances. *Harris*, 510 U.S. at 23. This is not an analysis which can be performed at this stage of litigation.

### III. COUNT II -- HOSTILE ENVIRONMENT SEXUAL HARASSMENT OF LEDESMA IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

The Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat § 760.01, *et seq.*, mirrors Title VII precisely in its treatment of hostile environment sexual harassment. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Because Defendant asserts essentially the same allegations with regard to the FCRA claim as with the Title VII sexual harassment claim discussed above, Plaintiffs need not readdress these issues.

### IV. COUNT III—RETALIATION FOR COMPLAINING ABOUT HOSTILE ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

Defendant properly notes that a plaintiff may have a valid claim under Title VII for retaliation for engaging in protected activity in opposition to conduct which is not, in fact, illegal, so long as the plaintiff had a good faith, objectively and subjectively reasonable belief that the employer was engaged in unlawful employment practices. *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008).

### A. Objectively Reasonable

Defendant asserts that, even if Plaintiff Ledesma engaged in protected activity (e.g., complained about sexual harassment) because she genuinely believed that she was being sexually harassed, her belief was objectively unreasonable. Hence, Ledesma's claim for retaliation under Title VII based on her complaints about sexual harassment must be dismissed. Motion to Dismiss at 22-23. Because Plaintiff Ledesma was actually sexually harassed, her protected activity regarding this harassment was objectively reasonable. In the alternative, Plaintiffs note that "[a] determination of how an objectively reasonable person perceives a set of circumstances is a question of fact." *Mortenson v. City of Oldsmar*, 54 F.Supp. 2d 1118, 1126 (M.D. Fla. 1999). Therefore, a determination of whether Plaintiff Ledesma's belief that she was being sexually harassed was objectively reasonable cannot be made at this time.[5]

### V.   COUNT IV—RETALIATION FOR COMPLAINING ABOUT HOSTILE ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF THE FCRA

The FRCA follows Title VII precisely in its treatment of retaliation. Because Defendant asserts the same allegations with regard to Ledema's retaliation claim under the FCRA as those noted above under Title VII, Plaintiffs need not readdress these issues.

### VI.  COUNTS V, VI AND VII – HOSTILE ENVIRONMENT HARASSMENT ON THE BASIS OF RACE AND/OR NATIONAL ORIGIN, IN VIOLATION OF TITLE VII, THE FCRA, AND 42 U.S.C. § 1981, RESPECTIVELY

A prima facie case for hostile environment harassment on the basis of race and/or national origin is the same, whether it is based on a violation of Title VII, 42 U.S.C. § 1981 (*Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2010)), or the FCRA (*Harper*, 139 F.3d at 1387): (1) that the plaintiff belongs to a protected group; (2) that he has been subjected

---

[5] This conclusion is consistent with the fact that none of the cases Defendant cited in support of this argument on pp. 22-23 of the Motion to Dismiss was resolved at the pleadings stage

to unwelcome harassment; (3) that the harassment was based on his race and/or national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244-45 (11th Cir. 2004). Defendant asserts that Plaintiffs' claims of hostile environment harassment on the basis cannot satisfy the following elements:

### A. Because of Race and/or National Origin

Plaintiffs' factual allegations supporting these claims are found at ¶¶ 40-46 in the Complaint. Defendant acknowledges Plaintiffs' allegations that they were treated differently because of their Hispanic national origin but fails to recognize Plaintiffs' allegations that that they were treated differently because of their race. Motion to Dismiss at 16. The allegations that Billy Haskins, the Plaintiffs' harasser, told the Hispanic Plaintiffs that they did not need water breaks because of the color of their skin and denied them water breaks accordingly (¶¶ 42-44), implicate both national origin and race. And, "race" historically has been defined broadly for purposes of 42 U.S.C. § 1981 to encompass what might today be considered national origin. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), which is even cited in the Complaint at ¶ 260-61.

The Plaintiffs assert that there are similarly-situated non-Hispanic employees who were treated more favorably than them (¶¶ 41, 45-46), which is sufficient to establish a prima facie claim. The cases cited by Defendant for the proposition that a more specific identification of the more-favorably treated persons is required (Motion to Dismiss at 17-18) are easily distinguishable as cases at a much more advanced stage of litigation. To the extent that Defendant tries to go beyond the face of the Complaint to introduce evidence that there were no

9

similarly-situated non-Hispanic employees based on the Declaration of Clark (Motion to Dismiss at 16-17), these factual allegations may not be considered in this Rule 12(b)(6) motion for the reasons stated above under § I.

### B. Severe or Pervasive

Defendant asserts that Plaintiffs "fail to allege facts in Counts V, VI, and VII showing that the alleged harassment was severe enough or pervasive enough to alter the terms and conditions of their employment." Motion to Dismiss at 17. As noted above in the context of the sexual harassment claims, determining whether harassment is severe or pervasive is a multi-factor evaluation which must take into consideration all the circumstances. *Harris*, 510 U.S. at 23. Hence, this is not an analysis which can be performed on a 12(b)(6) motion.

However, Plaintiffs also note that each of these Counts incorporates by reference ¶¶ 40-46. *See* ¶¶ 154, 169, 184. Among relevant factual allegations set forth in ¶¶ 40-46 are the following: Plaintiffs' supervisor, Billy Haskins, would regularly deny the Hispanic Plaintiffs any water breaks and would also assign them the most physically demanding task. Given that these Plaintiffs were manual laborers who worked outdoors in the sub-tropical climate of Southwest Florida, denying them water while increasing their work would certainly indicate an alteration of the terms and conditions of their employment.

## VII. COUNTS IX AND X – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, FAILURE TO PAY MINIMUM WAGES FOR ALL HOURS WORKED AND FAILURE PAY OVERTIME FOR ALL HOURS WORKED IN EXCESS OF 40 HOURS PER WEEK

The Defendant asserts that the Plaintiffs claims related to the Fair Labor Standards Act are deficient in the following respects.

### A. Enterprise Coverage

The Defendant correctly recognizes that the Fair Labor Standards Act ("FLSA") claims in this case are premised on the theory of enterprise coverage. To prove that the Defendant is a qualifying enterprise under the FLSA, the Plaintiffs will ultimately have to prove that the Defendant has employees "engaged in commerce or in the production of goods for commerce" or "handling, selling, or otherwise working on goods or material that have been move in or produced for commerce by any person" and that the Defendant has annual gross volume of sales or business of $500,000 or more. 29 U.S.C. § 203(s)(1)(A). Certainly a country club may qualify as an "enterprise" within the meaning of FLSA. See, e.g., *Madison v. Williams Island Country Club*, 606 So.2d 687, 688-89 (Fla. 3d DCA 1992) (finding that a country club irrigation technician was covered by the FLSA). If the Plaintiffs cannot ultimately prove all of the facts necessary to establish that Defendant is an enterprise within the coverage of the FLSA, then these claims will need to be dismissed. But this kind of determination cannot be made until discovery is conducted. See, e.g., *Alvarado v. Bayshore Grove Management, LLC*, 606 So.3d 405, 406 (Fla. 3d DCA, 2011) (granting summary judgment in favor of the employer on plaintiff's FLSA because there were undisputed facts that the employer had less than $500,000 in gross annual sales). Plaintiffs assert that pleadings regarding Defendant's status as a qualifying enterprise are sufficient.

### B. Insufficient Allegations of Unpaid Wages and Overtime

Upon further review, Plaintiffs concede that the allegations concerning unpaid wages and overtime requires some additional specificity in the that the Plaintiffs must, at least give their best estimate of the amount of unpaid hours. Plaintiffs seek leave to amend these claims.

**VIII. COUNTS IX – XIII – MISCELLANEOUS RETALIATION CLAIMS CONCERNING PLAINTIFFS DIAZ, DE JESUS ALFARO, JIMENEZ, AND MENDOZA**

A prima facie case of retaliation contains three elements: first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002). Defendants allege that Plaintiffs Diaz, De Jesus Alfaro, Jimenez, and Mendoza cannot satisfy the third element, showing a causal link between any adverse action and the protected expression. Before analyzing these claims, it is necessary to summarize the relevant facts.

. At some unspecified date on or before July 7, 2010, Diaz, De Jesus Alfaro, Jimenez, and Mendoza, each complained to his immediate supervisor, Ledesma, about the wage and hour violations which he believed were occurring and the harassment by Haskins on the basis of national origin and/or race. Then, on July 7, 2010, Ledesma had a meeting with William "Bill" Clark ("Clark") in which she raised the complaints of discrimination on the basis of national origin and/or race and the wage and hour violations on behalf of herself (she was also a victim) and the other Plaintiffs. ¶ 64. She even told Clark that some of the other Plaintiffs had discussed hiring an attorney for the wage and hour violations, which made Clark very defensive. ¶¶ 70-71. However, Ledesma never named the other Plaintiffs on whose behalf she was also complaining, even telling Clark that she did not know who had mentioned getting an attorney when he asked her. ¶ 71.

**A. Defendant's knowledge (or lack thereof)**

Defendant asserts that Diaz, De Jesus Alfaro, Jimenez, and Mendoza cannot establish a causal link between any protected expression they may have made and any adverse employment

consequences they may have suffered. They cannot prove at this stage that anyone at Defendant knew of the protected expression, because Ledesma did not reveal their names.

To establish the required causal link for a prima facie case of retaliation, however, " a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993), quoting *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). This can, of course, be established by circumstantial evidence. *Goldsmith*, 996 F.2d at 1163. Even at the summary judgment stage, a plaintiff is not required to prove that the employer/decisionmaker knew of the complaint; summary judgment on the retaliation claim is not justified so long as one might infer that the decisionmaker had knowledge of the complaint. *Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938, 941 (7th Cir. 1999). Close temporal proximity between the protected activity and the adverse job action is circumstantial evidence of retaliation. *Scott*, 195 F.3d. 938.

### B. Relevant Time for Measuring Temporal Proximity

The Defendant alleges that Plaintiffs Diaz, De Jesus Alfaro, Jimenez, and Mendoza cannot rely on temporal proximity to establish circumstantial evidence of a causal link because the Complaint does not allege when each man engaged in the protected activity--complaining of the unlawful conduct to his supervisor Ledesma. However, the relevant date is not when the protected activity occurred but rather when the employer learned that the protected activity occurred. *Raspanti v. Four Amigos Travel, Inc.*, 266 Fd. Appx. 820, 823 (11th Cir. 2008). In this instance, the earliest the employer/decisionmaker could have learned of these complaints by the male Plaintiffs, was when Plaintiff Ledesma brought them to the attention of GM Clark during a July 7, 2010 meeting. Given that the <u>last</u> of these four Plaintiffs to be terminated was fired on August 9, 2010, this indicates a close temporal proximity between the protected activity and the

adverse employment action.  This strong temporal connection alone provides sufficient circumstantial evidence to establish the requisite causal link for a prima facie claim of retaliation. However, Plaintiffs note that there are other factual allegations in the Complaint which also demonstrate circumstantial evidence of a causal link.

And, once again, the cases cited by Defendant are irrelevant to matter at hand because none involves the dismissal of a case for failure to establish the requisite causal connection for retaliation any sooner than at summary judgment.  In fact most of the cases were ones in which the Plaintiff had failed to prove the necessary causal link to prove retaliation at trial.

## IX.  COUNTS II, IV, VI, AND XI – EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE FCRA
### A. Counts II and IV -- Ledesma

The Defendant asserts that Plaintiff Ledesma failed to properly exhaust her state law administrative remedies, a prerequisite to a claim under the FCRA, by filing a verified complaint with the Florida Commission on Human Relations (FCHR).  Motion to Dismiss at 6-7.  ¶ 86 of the Complaint correctly states that Ledesma filed a Charge of Discrimination with the EEOC, but this does not mean, as Defendant alleges, that she filed a complaint only with the EEOC.  Motion to Dismiss  at 6.  Ledesma's Charge of Discrimination was also filed with the FCHR.  See Exhibit E to the Declaration of Clark, (a copy of Ledesma's EEOC Charge of Discrimination, showing that Ledesma requested that her Charge of Discrimination also be filed with the Florida Commission on Human Rights).  Nevertheless, the Defendant contends that the EEOC Charge of Discrimination does not satisfy the requirements under Fla.Stat. § 760.11(1) because it is not a "verified"complaint as defined by Fla. Stat. § 96.525(1).  Defendant states as follows:

> While the Charge of Discrimination [was] signed by Ledesma . . . , Ledesma failed to properly verify the complaint.  *See* Exhibit "E" to the *Declaration of Clark*.  Ledesma neither had the complaint verified by an appropriate judicial officer or notary public in the

> space available at the bottom right of the form, nor did she execute the declaration in that same location of the form stating that she read the charge and that the facts are true and correct.

Defendant's Motion to Dismiss at 6.

In fact, Ledesma's Charge of Discrimination was verified by signed written declaration consistent with Fla. Stat. § 92.525. Defendant's mistaken assertion is based on a misreading of Fla. Stat. § 92.525. The Charge of Discrimination, which was filed by Ledesma, shows that she signed the Charge in the lower left corner, directly below the printed phrase "I declare under penalty of perjury that the above is true and correct." See Exhibit E to Defendant's Declaration of Clark. The essence of Defendant's claim seems to be that, because the Charge of Discrimination did not use the exact language of Fla. Stat. § 95.525(2), the signed written declaration is not sufficient for a verified complaint. However, the permissive language of Fla. Stat § 95.525(1) as well as the plain meaning of § 95.525(4) makes it clear that a signed written declaration need not use the exact wording of § 95.525(2), but merely "words to that import or effect." Ledesma's Charge of Discrimination qualifies as a verified complaint under the FCRA because it meets each of the essential requirements of verification under § 95.525: (1) a document signed or affirmed by the individual; (2) a statement as to the truth and accuracy of the document; and (3) an acknowledgment that the declaration is made under penalty of perjury.

Secondly, even if the complaint filed by Ledesma to the FCHR were not verified, she could file a timely complaint to the FCHR now, despite the fact that more than 365 days has passed since the alleged violation under the FCRA occurred. Where a timely but unverified complaint to the FCHR has been filed, the complainant may file a second, verified complaint, even though the time for filing has subsequently expired; the second, verified complaint will relate back to filing of the original, unverified complaint. *Green v. Burger King Corp.*, 728 So.

2d 369 (Fla. 3d DCA 1999). Therefore, even if the Court were to find that Ledesma's complaint to the FCHR were unverified, the proper remedy would be to grant Ledesma leave to refile a verified complaint with the FCHR and Plaintiffs leave to file an Amended Complaint before this Court.

### B. Counts VI and XI – Diaz, De Jesus Alfaro, Jimenez, and Mendoza

The Plaintiffs concede that four of the five Plaintiffs—Diaz, De Jesus Alfaro, Jimenez, and Mendoza – did not indicate on their respective EEOC Charges of Discrimination that they also wished the Charge to be filed with the Florida Commission on Human Relations ("FCHR"), a fact which Plaintiffs' Counsel inadvertently overlooked in preparing the Complaint. *See* Exhibits A-D, attached to Declaration of Clark. These four Plaintiffs also did not file complaints of discrimination directly with the FCHR. Since, as noted above, exhaustion of administrative remedies with the FCHR is a prerequisite for bringing a cause of action under the Florida Civil Rights Act ("FCRA"), all claims of Plaintiffs Diaz, De Jesus Alfaro, Jimenez, brought under the FCRA in Counts VI and XI of the Complaint, must be stricken.

## IX. COUNTS V-XIII -- MAURICIO DIAZ / MELSAR ACUNA

### A. The Employment of Mauricio Diaz / Melsar Acuna

The Defendant asserts that all claims brought by Plaintiff Mauricio Diaz must be dismissed because they are all premised on his being a former employee of the Defendant, and Defendant maintains it did not employee a golf maintenance worker called "Mauricio Diaz." Even though this claim is essentially raised through the above-referenced improperly introduced Declaration of Clark, the Plaintiffs chose to address this matter in the interest of clarity. The Complaint correctly states that "Mauricio Diaz" was employed by Defendant (¶ 27) and that Diaz's Notice of Right to Sue was issued under the name "Melsar Acuna," (¶ 13). However, the

Complaint is admittedly not as clear as it could be on this point: Mauricio Diaz and Melsar Acuna are the same man. The Plaintiff's full name is Mauricio Melsar Diaz Acuna. Like many Spanish-speaking persons, he has two surnames, which often creates problems in the United States where the cultural norm is for a single surname and every form is engineered with that in mind. See, e.g., the EEOC Notice of Right to sue letter issued for Plaintiff Manuel De Jesus Alfaro, who also has two surnames "De Jesus" and "Alfaro," in which his name was cropped to simply "Manuel Alfaro." In the case of Plaintiff Mauricio Melsar Diaz Acuna (hereinafter "Diaz" as in the Complaint, to avoid confusion), the problem is further complicated by the fact that, like many people, he goes by one of his Christian names among some persons and his other Christian names others. Notably, Defendant doesn't deny that "Melsar Acuna" worked for them during the time period alleged by Diaz in the complaint. Because Defendant did employ Diaz, Defendant's alleged ground for dismissal of his claims is without merit. .

### B. Counts V and X – Exhaustion of Administrative Remedies under Title VII

Filing a claim with the Equal Employment Opportunity Commission ("EEOC") and receiving a Notice of Right to Sue are, of course, both prerequisites for filing a civil action under Title VII of the Civil Rights Act of 1964. Defendant Diaz filed a Charge of Discrimination with the EEOC and received a Notice of Right to Sue. *See* Exhibit D to Declaration of Clark and Exhibit B to the Complaint, respectively. Nevertheless, the Defendant asserts that, because the Charge of Discrimination and Notice of Right to Sue were not issued in the full name of Plaintiff Diaz as it would have been written on his baptismal certificate or birth certificate, he has failed to exhaust his administrative remedies. Notably, Defendant cites no administrative, statutory, or case law in support of this novel theory. Notwithstanding Defendant's creative

argument, Diaz exhausted his administrative remedies and his claims under Title VII are properly pled.

## CONCLUSION

Defendant's overreaching 12(b)(6) motion seeks the dismissal of each and every count of the Complaint, with prejudice, for failure to state a claim. However, the Plaintiffs have established that only two of the grounds asserted in the Motion to Dismiss have even partial merit: 1) that four of the Plaintiffs have not exhausted their administrative remedies under the Florida Civil Rights Act and 2) that the Plaintiffs' need to seek leave to amend their Complaint to assert additional facts in support of their claims under the Fair Labor Standards Act. Plaintiffs have discredited all other grounds raised by the Defendant to challenge the Complaint.

**WHEREFORE**, Plaintiffs Celina Ledesma, Mauricio Diaz, Manuel De Jesus Alfaro, Juan Jimenez, and Daniel Mendoza respectfully request that this Honorable Court enter an Order doing the following:

1) Denying the Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law in full, except with respect to the claims of Plaintiffs Mauricio Diaz, Manuel De Jesus Alfaro, Juan Jimenez, and Daniel Mendoza under Counts VI (discrimination on the basis of national origin and/or race in violation of the Florida Civil Rights Act) and Count XI (retaliation for engaging in activity protected under the Florida Civil Rights Act and/or retaliation for a third party's engaging in activity protected under the Florida Civil Rights Act);

2) Dismissing the claims of Plaintiffs Mauricio Diaz, Manuel De Jesus Alfaro, Juan Jimenez, and Daniel Mendoza under Counts VI and XI of the Complaint;

3) Granting leave to amend Counts VIII and IX of the Complaint;

4) Granting leave to amend the Complaint in the event that the Court finds it to be deficient in any respect;

and

5) Granting any and all other relief that the Honorable Court finds just.

Dated: October 7, 2011  **s/ Mina Willis Lani**
Mina Willis Lani, Esq.
Florida Bar No. 0089114
Counsel for Plaintiff
ROJAS & BUTCHER, P.L.
6830 Porto Fino Circle, Ste 2
Fort Myers, Florida 33928
Telephone: (239) 322-1653
Fax: (239) 322-1658
Email: mlani@rojasandbutcher.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail on October 7, 2011 to the following non-CM/ECF participants: None.

            **s/ Mina Willis Lani**
            Mina Willis Lani, Esq.
            Florida Bar No. 0089114
            Counsel for Plaintiff
            ROJAS & BUTCHER, P.L.
            6830 Porto Fino Circle, Ste 2
            Fort Myers, Florida 33928
            Telephone: (239) 322-1653
            Fax: (239) 322-1658
            Email: mlani@rojasandbutcher.com